# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

ANDREL MARTINEZ,

        Plaintiff,

        v.

DELAWARE STATE POLICE and
DELAWARE STATE TROOPERS
ASSOCIATION,

        Defendant.

No. 16-cv-564 (RGA)

## MEMORANDUM OPINION

Anthony N. Delcollo, Esq., G. Kevin Fasic, Esq., Katherine Randolph Witherspoon, Esq., Cooch and Taylor, Wilmington, DE, for Plaintiff Andrel Martinez.

Jeffrey M. Weiner, Esq., Law Offices of Jeffrey M. Weiner, P.A., Wilmington, DE for Defendant Delaware State Troopers Association.

Michael F. McTaggart, Esq., Deputy Attorney General for the State of Delaware Department of Justice, Wilmington, DE, for Defendant Delaware State Police.

November 23, 2016

ANDREWS, U.S./DISTRICT JUDGE:

On March 2, 2015, Plaintiff Andrel Martinez's seventeen and a half years with the Delaware State Police came to an end. He was fired. The events leading to Plaintiff's termination are the focus of this case.

The parties agree that Plaintiff improperly accessed the Delaware Criminal Justice Information System ("DELJIS"). Plaintiff pled guilty to two criminal charges for doing so and had his DELJIS credentials revoked. For the State Police, the story begins and ends there. Plaintiff's explanation goes differently.

Plaintiff alleges that he was singled out from his white colleagues. He was subjected to a more searching investigation and harsher punishment because he is Hispanic. Plaintiff paints a grim picture of racially motivated hazing and bigoted comments from his colleagues and superiors, including those involved in revoking his DELJIS credentials.

Plaintiff also alleges that he complained about his discriminatory treatment to his union and it failed to act because he was Hispanic.

Based on these allegations, Plaintiff brings employment discrimination claims against his employer, the Delaware State Police, and his union, the Delaware State Troopers Association. He also sues under 42 U.S.C. § 1983 for violation of his procedural and substantive due process rights.

## I.    BACKGROUND

Plaintiff Andrel Martinez was a Master Corporal with the Delaware State Police until March 2, 2015 when he was fired. (D.I. 1 at 4). Plaintiff was terminated after his DELJIS credentials were revoked. (*See id.*). The investigation and process resulting in this revocation are the subject of this suit.

The chain of events leading to the revocation is rooted in a custody dispute between him and his ex-girlfriend. (*Id.* at 2). Plaintiff admits, at least, that he "used DELJIS in an effort to check into the safety and welfare of his daughter...." (*Id.*).

In March 2014, Plaintiff was arrested for improperly accessing DELJIS information. (*Id.* at 2, 10). Four days after his arrest he was suspended from the State Police without pay and benefits. (D.I. 1-1 at 2). Plaintiff ultimately pled guilty to two counts of improperly accessing DELJIS information. (D.I. 1 at 2). Six months later, the DELJIS board held a hearing that resulted in the board revoking Plaintiff's credentials. (*Id.* at 3–4). Without credentials, Plaintiff could not access DELJIS information and, because of this, the State Police terminated him. (*Id.* at 4).

Plaintiff alleges that the State Police treated him differently than white employees in the way his misuse of DELJIS was handled, the depth of the investigation, and the punishment meted out. Paragraph 10 of the Complaint details this differential treatment. (*See id.* at 4–5).

Plaintiff alleges he was discriminatorily (1) not afforded "due process protections"; (2) not given an opportunity to present his side of the story about the

underlying custody dispute nor "to address misunderstandings or mistakes that constituted technical violations"; (3) "prosecuted by investigating officers far more aggressively... during the DELJIS hearing"; (4) the victim of uneven application of DELJIS use standards; (5) "not offered the opportunity for escalating discipline or remedial training"; (6) not provided "ameliorat[ive] or mitigat[ing]" evidence; (7) punished criminally instead of administratively; and (8) investigated in greater depth, including a searching review of his DELJIS use for the preceding two years. (*Id.* at 4–5).

To show he was singled out because he was Hispanic, Plaintiff points to three white officers and a white civilian employee caught using DELJIS improperly who were treated differently and less severely. (*Id.* at 6–7). These comparators were either not charged criminally, were charged criminally and not dismissed from the State Police, or were not investigated at all for improperly accessing DELJIS or improperly disseminating DELJIS information. (*Id.*)

Plaintiff also alleges conduct and comments that smack of racial bias. (*Id.* at 8–9). He was told he was on the "taco circuit" and had Taco Bell coupons placed in his mailbox. (*Id.* at 8). He was called a "Latin Lover," "Peruvian General," and told because of his size and complexion he did not appear Hispanic. (*Id.* at 8–9). A picture of him was defaced with a curly mustache and another picture of a man in a sombrero was put on his mailbox. (*Id.*)

His co-workers and superiors participated alike. (*Id.*) So too did the officers that he alleges "in essence prosecuted" him through the DELJIS hearing. (*See id.* at

4

3, 8–9). One such officer told Plaintiff, "you ought to know better this isn't a
Hispanic woman you dated and she won't put up with you." (*Id.* at 9). Another
officer "made racially derogatory comments regarding Plaintiff's potential to be
promoted because he was Hispanic and bilingual." (*Id.* at 8). He also told Plaintiff,
"I need you to talk to your wetback buddies...." (*Id.*). It was the normal course for
Plaintiff to receive derision when his co-workers dealt with Hispanic individuals.
(*Id.* at 9).

In addition to his claims against the State Police, Plaintiff alleges that the
Delaware State Troopers Association provided him with subpar representation
because he was Hispanic. (*See id.* at 7–8, 11–12). According to Plaintiff, in March
2014, he began to communicate regularly with his union representative. (*Id.* at 7).
Some months later, Plaintiff asked the union to process his complaints and for any
helpful information for his defense at the DELJIS hearing. (*Id.*). "The e-mail he
received in response offered no help and no clarification about the status of his
complaints." (*Id.* at 7–8). After that, his union representative stopped talking to
him. (*Id.* at 8).

Plaintiff also alleges that the union offered him "minimal" financial
assistance to defend himself in the criminal case. (*Id.*). He alleges that the union did
not process his gender and race discrimination complaints against the State Police.
(*Id.*). Finally, Plaintiff complains that "no efforts were made to intervene to address
complaints/grievances related to adverse action against Plaintiff's employment." (*Id.*

at 8). Plaintiff alleges this treatment was disparate from what white union members received and was because he is Hispanic. (*Id.* at 12).

On June 30, 2016, Plaintiff filed this suit. (D.I. 1). Plaintiff claims under federal and state law that his employer and his union discriminated against him because he is Hispanic. (*Id.* at 10–12). He also claims that his due process rights were violated in the manner of his termination. (*Id.* at 11). Plaintiff seeks lost wages and back pay, compensatory and punitive damages, attorney's fees and costs, and injunctive relief. (*Id.* at 13). The union moved to dismiss the complaint under Federal Rule of Civil Procedure 12. (D.I. 8). The State Police did the same. (D.I. 12).

## II. THRESHOLD QUESTIONS

Before reaching the substance of Plaintiff's allegations, I must consider threshold questions of sovereign immunity and the reach of 42 U.S.C. § 1983.

### A. Sovereign Immunity

Plaintiff's Title VII and Delaware Discrimination in Employment Act claims raise two threshold questions about this Court's power to resolve his claims.

First, Plaintiff's request for monetary damages necessarily raises the question of Eleventh Amendment immunity. Normally a state's status as defendant is the beginning and end of the inquiry. Not here. Plaintiff's state law and Title VII claims fall in the narrow category of claims for retrospective damages allowed against a state.

For one, the State waived its sovereign immunity for the state law claim. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). The Delaware

Act explicitly allows for recovery against state entities for employment discrimination. *See* Del. Code tit. 19, § 710(7) (defining employer to include state entities). Critically, the law also provides plaintiffs a choice of a federal forum. Del Code tit. 19, § 714(c) ("The charging party shall elect a Delaware or federal forum...."). [1] Thus, the State has unequivocally consented to suit.

For two, Congress exercised its power under Section 5 of the Fourteenth Amendment to abrogate state sovereign immunity for Title VII claims. The Supreme Court held as much in *Fitzpatrick v. Bitzer*. 427 U.S. 445, 447, 456 (1976); *accord*, *Johnson v. Diamond State Port Corp.*, 50 F. App'x 554, 555 n. 2 (3d Cir. 2002) (allowing damages in racial discrimination cases against state defendant because Title VII "validly abrogates" state sovereign immunity).

Second, the State Police argues this Court lacks jurisdiction to resolve the State law claim because the legislature vested the Superior Court with sole jurisdiction. (D.I. 13 at 17–18). The statute, however, gives plaintiffs a choice of forum: state or federal court. *See* Del Code tit. 19, § 714(c). Thus, Plaintiff's employment discrimination claims survive these initial hurdles.

---

[1] The Court's own research uncovered *McKay v. Del. State Univ.*, 2000 WL 1481018 (D. Del. 2000). In *McKay*, the district court held it was barred by the Eleventh Amendment from exercising jurisdiction over a state law employment discrimination claim. *Id.* at *12. Its analysis, however, does not suggest that the effect of § 714(c) was raised. *See id.* Therefore, I do not consider it persuasive authority on this issue.

## B. Reach of Section 1983

The same is not true of Plaintiff's § 1983 claims. Count II asserts procedural and substantive due process claims through § 1983 against the State Police.[2] The substance of these claims aside, they must be dismissed. Plaintiff has chosen the wrong defendant.

The State Police is not an appropriate defendant for Plaintiff's § 1983 claims. A state entity is not a person within the meaning of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65–66 (1989). *Ex Parte Young* would allow Plaintiff's request for injunctive relief against a state official acting in his official capacity. 209 U.S. 123, 159 (1908). Plaintiff's complaint, however, does not include an individual defendant, only the State Police. Plaintiff's brief references his desire to include an individual defendant (D.I. 15 at 7–8), but Plaintiff has not filed the appropriate motion and supporting documents to amend the complaint. Accordingly, Count II of the complaint is dismissed without prejudice.

## III. EMPLOYMENT DISCRIMINATION CLAIMS

Having resolved these threshold issues, I now reach the substance of Plaintiff's allegations of employment discrimination. In Count I, Plaintiff brings federal and state employment discrimination claims against the State Police, and in

---

[2] Count II of the complaint does not specify a defendant. (*See* D.I. 1 at 11). The union, however, would not be an appropriate defendant for a § 1983 claim absent some showing of state action. *See, e.g., Jackson v. Temple Univ. of the Commonwealth Sys. of Higher Ed.*, 721 F.2d 931, 932–33 (3d Cir. 1983).

Count III, against the union. For the following reasons, the complaint is maintained against the former and dismissed against the latter.

### A. Legal Standard

Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 558 (2007). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.,* 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly,* 550 U.S. at 555). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *See Johnson v. City of Shelby,* —— U.S. ——, 135 S. Ct. 346, 346 (2014).

A plaintiff must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 347. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## B.   Malicious Prosecution and Estoppel

As a preliminary matter, both Defendants argue that Plaintiff's claims are, in essence, malicious prosecution claims that are barred by his guilty plea. In order to bring a malicious prosecution claim, a plaintiff is required to show he prevailed in the criminal prosecution. *Heck v. Humphrey*, 512 U.S. 477, 484 (1994). Otherwise, a malicious prosecution claim would be a civil avenue for collateral attack on the underlying conviction. *Id.*

Defendants' argument mischaracterizes Plaintiff's complaint. It is not that the state criminally prosecuted him because he was Hispanic. His complaint is that his *employer* chose a track of discipline that was more severe because he was Hispanic. His claim is analogous to a plaintiff claiming a private employer involved the police instead of using internal discipline procedures. Plaintiff's status as a criminal defendant is not essential to his claim, whereas a plaintiff bringing a malicious prosecution claim necessarily must be a criminal defendant.

Defendants cite to *McDerby v. Daniels*, 2010 WL 2403033 (D. Del. June 16, 2010). *McDerby* is an appealing case for Defendants because it too encompassed a challenge to a DELJIS investigation. *See id.* at *5. That case's differences, however, are more instructive than its similarities. *McDerby* was not a Title VII claim. Instead, that plaintiff was asserting a right wholly unrelated to his employment—his right to a fair trial. *Id.* at *4. His claim sounded in constitutional criminal law and, at bottom, he sought to "demonstrate the invalidity of his guilty plea." *See id.*; *see also Heck*, 512 U.S. at 479 (disallowing a civil claim that the criminal

10

investigation was unlawful, that exculpatory evidence was withheld, and that
illegal evidence was used to convict the plaintiff). Here, Plaintiff contests how he
was treated as an employee, not as a criminal defendant. Thus, *McDerby* is
irrelevant.

## C.   Title VII and State Law Claims against the State Police

The State Police argues Plaintiff has alleged insufficient facts to give rise to a
plausible claim of employment discrimination.

No one disputes Plaintiff's membership in a Title VII protected class. Thus,
one way he can make his case is by showing that he "'engaged in prohibited conduct
similar to that of a person [outside plaintiff's protected class]' and that plaintiff was
disciplined more severely than the other person." *Dempsey v. Del. Dep't of Pub.
Safety*, 579 F. Supp. 2d 616, 622 (D. Del. 2008) (quoting *Moore v. City of Charlotte*,
754 F.2d 1100, 1105–06 (4th Cir. 1985) (alteration in original) and citing *Cook v.
CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993); *Jones v. Gerwens*, 874 F.2d
1534, 1540 (11th Cir. 1989); *Wilmington v. J.I. Case Co.*, 793 F.2d 909, 915 (8th Cir.
1986); and *Green v. Armstrong Rubber Co.*, 612 F.2d 967, 968 (5th Cir. 1980)). Three
elements—(1) membership in a protected class, (2) similar misconduct, and (3)
differential treatment—make out a *prima facie* case of discriminatory punishment.
*Id.*

Plaintiff has alleged enough in his complaint to give rise to a plausible claim
that he was treated differently, and more harshly, than similarly situated white
employees. He has alleged four white comparators. The State Police attacks the

11

factual similarity of the named comparators. Plaintiff, however, is not required to prove his case at this point. *See Sheppard v. David Evans and Assoc.*, 694 F.3d 1045, 1050 (9th Cir. 2012) (finding "allegation that her five younger comparators kept their jobs" a sufficient allegation to satisfy *Twombly*).

Plaintiff buttresses his comparator argument with two pages of specific allegations that State Police officials, including supervisory officers, directed derogatory remarks at him because he was Hispanic. For example, Plaintiff alleges that one officer involved in his DELJIS proceeding "made racially derogatory comments regarding Plaintiff's potential to be promoted because he was Hispanic and bilingual." That same officer, a supervisor, told Plaintiff, "I need you to talk to your wetback buddies...." The other officer told Plaintiff, "you ought to know better this isn't a Hispanic woman you dated and she won't put up with you." These allegations, at a minimum, give rise to a plausible claim that Plaintiff's race was a motivating factor in the disciplinary decisions the State Police made.

The State Police also argues it is not responsible for the DELJIS Board and, because of that, is immunized for its decision to fire Plaintiff. *(See* D.I. 13 at 15–17). Again, Plaintiff has alleged enough to create a plausible claim to relief. The DELJIS Board may be an entirely separate entity from the State Police. Even so, Plaintiff's allegations suffice for two reasons. First, Plaintiff directly attacks State Police conduct that led to the DELJIS Board action, for example, the depth of the investigation. Second, Plaintiff has alleged that State Police actors were involved in the DELJIS proceedings. For these reasons, the Plaintiff's allegations against the

12

State Police are sufficient to sustain his state and federal employment
discrimination claims as to it.

### D.    Title VII and State Law Claims against the Union

Plaintiff's allegations against the union, however, come up short. Both Title
VII and Delaware law specifically provide for actions against unions. Del. Code tit.
19, § 711(c); 42 U.S.C. § 2000e-2(c). The statutory language allows a claim that the
union was racially discriminatory in the way it represented a member. *See
Goodman v. Lukens Steel Co.*, 482 U.S. 656, 667 (1987) (interpreting 42 U.S.C. §
2000e-2(c)(1), which was adopted without significant amendment as Del. Code tit.
19, § 711(c)(1)). One way Plaintiff could make this claim is by showing that the
union intentionally failed to prosecute complaints of racial discrimination it knew
were meritorious. *Id.* at 669. But Plaintiff has not alleged facts suggesting the union
knew his claims were meritorious and intentionally failed to prosecute them. If he
had, it would support a reasonable inference that the union discriminated against
him because he was Hispanic.

Nor has Plaintiff alleged his comparators were treated differently *by the
union* or that derogatory remarks were made *by union officials*. Plaintiff offers no
factual support for his allegations about the union's motive. Accordingly, Plaintiff's
intentional discrimination claims against the union are dismissed without
prejudice.

13

## IV.  CONCLUSION

For the above stated reasons, the State Police's motion is granted in part and denied in part. The union's motion is granted in full. A separate order consistent with this Memorandum Opinion will follow.