IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ANDREL MARTINEZ, :
 :
      Plaintiff, :
 :
 : C.A. No. 1:16-00564-GMS
v. :
 : JURY TRIAL DEMANDED
THE STATE OF DELAWARE :
DEPARTMENT OF HOMELAND :
SECURITY DIVISION OF THE :
STATE POLICE; ALICE BAILEY, :
in her individual and official :
capacities, and NATHANIEL :
MCQUEEN, in his individual and :
official capacities, :
 :
      Defendants. :

**PLAINTIFF ANDREL MARTINEZ'S
ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS'
<u>MOTION FOR SUMMARY JUDGEMENT</u>**

Dated: June 25, 2018            **Offit Kurman**

                                            */s/ Anthony N. Delcollo*
                                            G. Kevin Fasic (# 3496)
                                            Katherine Randolph Witherspoon (# 3348)
                                            Anthony N. Delcollo (# 5688)
                                            1201 N. Orange Street
                                            Suite 10 East
                                            Wilmington, DE 19805
                                            (302) 351-0903 – Telephone
                                            (302) 351-0935 – Facsimile
                                            adelcollo@offitkurman.com – Email


# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................................iii

NATURE AND STAGE OF THE PROCEEDINGS...................................................................1

STATEMENT OF FACTS...........................................................................................................1

SUMMARY OF THE ARGUMENT............................................................................................6

STANDARD OF REVIEW..........................................................................................................6

ARGUMENT................................................................................................................................7

    I.    MR. MARTINEZ SUCCESSFULLY REBUTS DEFENDANT DSP'S ALLGEDLY LEGITIMATE BASIS FOR TERMINATION AND ESTABLISHES A PRIMA FACIA CASE.........................................................7

        a.  Plaintiff has successfully established a *prima facia* race discrimination claim..................................................................7

        b.  Martinez successfully rebuts DSP's proffered nondiscriminatory reason for termination...........................................................8

    II.   MR. MARTINEZ IS NOT BARRED IN HIS PURSUIT OF A DUE PROCESS CLAIM AS HE WAS NOT OFFERED A HEARING.............................10

CONCLUSION..........................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972) .................................................... 10

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................................................ 7

*Curley v. Klem*, 499 F.3d 199 (3d. Cir. 2007) ............................................................................... 13

*Danao v. ABM Janitorial Serv.*, 142 F. Supp. 3d 363 (E.D. Pa. 2015) ........................................... 9

*DeNinno v. Municipality of Penn Hills*, 269 Fed. App'x 153 (3d Cir. 2008) ................................ 11

*Fuentes v. Perske*, 32 F.3d 759 (3d Cir. 1994) .......................................................................... 9, 10

*Lamont v. New Jersey*, 637 F.3d 177 (3d Cir. 2011) ...................................................................... 7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ...................................... 7

*McDaniels v. Flick*, 59 F.3d 446 (3d. Cir. 1995) .......................................................................... 13

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972) ............................................................ 8

*McGee v. Council on Police Training*, 2014 Del. Super LEXIS 18 (Del. Super. 2014) .............. 11

*Scott v. Harris*, 550 U.S. 372 (2007) .............................................................................................. 7

*Tourtelotte v. Eli Lily and Co.*, 636 Fed. Appx. 831 (3d Cir. 2016) ............................................... 7

*Town of Cheswold v. Rosario*, 945 A.2d 1168 (Del. 2008) .......................................................... 12

*Williams v. Borough of West Chester, Pa.*, 891 F.2d 458 (3d Cir. 1989) ....................................... 7

*Wishkin v. Potter*, 476 F.3d 180 (3d Cir. 2007) .............................................................................. 7

**Statutes**

11 *Del. C.* § 9202 .......................................................................................................................... 11

**Rules**

Fed. R. Civ. P. 56(a) ........................................................................................................................ 6

## NATURE AND STAGE OF THE PROCEEDINGS

Defendants provide an accurate recitation of the nature and stage of the proceedings. Defendants filed their Motion for Summary Judgement on June 1, 2018. [D.I. 82]. This is Mr. Martinez's Brief in Opposition to Defendant's Motion for Summary Judgement.

## STATEMENT OF THE FACTS

Mr. Martinez disputes the characterization of the facts put forth in Defendants' Motion. Mr. Martinez was a successful and decorated State Police Trooper for a period of approximately 16 years. During a difficult separation between him and his then girlfriend, Mr. Martinez was provided information, which turned out to be true, that his ex-girlfriend was exposing his young daughter to individuals that had connections with convicted sex offenders. Martinez Appendix ("MA") 74-77. Shortly after this information was provided to him, Mr. Martinez, consistent with his training, began running through the DELJIS system the names of individuals that he suspected to be coming into contact with his daughter. MA 74, 65-69. Mr. Martinez did this pursuant to the "golden rule" referenced by himself and multiple individuals during their depositions, that officers were permitted to run information freely through DELJIS so long as that information was never disseminated to third parties. MA 38-42, 50-51. Certain parties filed complaints with DELJIS regarding Mr. Martinez's alleged misuse of same, and Mr. Martinez was ultimately charged with stalking and multiple counts of misusing the DELJIS system. DSPA 1, DSPA 345. Mr. Martinez pled guilty to two counts of improperly using the DELJIS system, but at no time admitted to disseminating any information from that system. DSPA 83. Mr. Martinez was later further prosecuted before the DELJIS Board of Managers for misuse of DELJIS, and his access to DELJIS was permanently suspended by the Board. DSPA 151.

Mr. Martinez was then given a notice by ▓▓▓▓▓▓▓▓ that his employment was being terminated due to him losing access to DELJIS. DSPA 174. Mr. Martinez, through his counsel, had requested a hearing and all process he was entitled to pursuant to the Law Enforcement Officers' Bill of Rights. DSPA 168. Mr. Martinez was never offered a hearing although Defendants mischaracterize reference to an opportunity to meet, after a decision had clearly been made to terminate Mr. Martinez's employment, as an opportunity for a hearing. MA 99, 105-108. Mr. Martinez ultimately filed charges of Title VII discrimination with the EEOC, and a complaint alleging unlawful sex and race discrimination and due process violations with this Court.

During the entirety of his employment and throughout the course of his investigation and arrest, Mr. Martinez was subjected to numerous racially discriminatory remarks and behaviors. MA 78-80. This behavior, corroborated by Martinez's former colleague ▓▓▓▓▓▓▓ (who worked at the same troop as Martinez for a time), included numerous references to Hispanic individuals as "wetbacks" or "amigos" with requests that Mr. Martinez offer translations, placing printouts of Martinez on workplace walls with racially disparaging defacements, and placing Tacobell coupons in Mr. Martinez's mailbox. MA 29-32, 37. Mr. Martinez offered testimony that he was asked whether he needed his arrest warrant in Spanish, and was chastised by an investigating officer that he should "know better" because he had not been dating a Hispanic woman. MA 79. Mr. Martinez also testified that an officer directly involved in the investigation against him, ▓▓▓▓▓▓▓, made racially derogatory remarks in the course of asking Mr. Martinez to translate for some Spanish speaking individuals that had come to the troop building. MA 78.

Multiple individuals, white males and females, in the course of their depositions were demonstrated to have engaged not merely in improper access, but improper dissemination, and were nevertheless permitted to maintain their employment with the State Police or remove themselves from employment in a manner that was less injurious to their reputations. DSPA 358-377. These individuals were given an opportunity to either continue their employment with the state police or continue their lives without the black mark of "dismissal" on their records. These individuals were also all afforded some manner of due process directly from the DSP. See generally D.I. 81, pp. 7-8. Mr. Martinez was afforded no such opportunity. Martinez 99-102, 105-108.

Furthermore, additional deponents offered information that corroborated statements from Mr. Martinez that there are some trooper jobs that do not require access to DELJIS or require access to DELJIS so infrequently that they could conceivably be carried out without DELJIS access. First, deponent DSP officer ████, noted that a Trooper Medic very infrequently uses DELJIS. MA 44-47. Second, deponent former DSP officer ████ noted that a Trooper Court Liaison also need not have access to DELJIS. MA 59. Although ████ referenced accessing DELJIS for us during "police prosecution days", there was no discussion that preparing for such activity needed to be a function of the liaison officer. ████ testimony is corroborated by deponent ████ testimony, as ████, who has served as a DSP Court liaison, made no mention of needing DELJIS access to perform this function. MA 15-16. Per deponents ████ and ████s testimony, DELJIS was not required in simply serving as the liaison. MA 59, 15-16. Additionally, Mr. Martinez testified that there were other functions within DSP employ, such as a position as a mechanic that did not require DELJIS access. MA 108-109. These facts taken together establish that there were a few jobs within the "trooper" classification and other sorts of

non-trooper jobs at the State Police that did not require DELJIS access. This provides for a dispute of material fact surrounding the assertion in ▮▮▮▮▮ letter to Mr. Martinez that he had to be administratively separated because of his lack of DELJIS access.

Mr. Martinez acknowledges that the Defendants' description of the DELJIS database is accurate, however, contrary to the Statement of Facts provided by Defendants, ▮▮▮▮▮ ▮▮▮▮▮ did not state that a trooper must have access to DELJIS in his deposition. ▮▮▮▮▮ actually references concerns regarding being around others potentially accessing DELJIS. DSPA 331-332. To the contrary, there are positions noted above wherein access would not be required. Tellingly, Defendants reference Motor Vehicle Information in reference to DELJIS access, but no reference is made by Defendants to a definition in Directive 1 to "improper access" and a specific violation related to improper access. DSPA 305, DSPA 185. Indeed, the form for Directive 1 specifically references the dissemination of information, and not the access of information. DSPA 305. Mr. Martinez and others testified as noted above, to the contrary, that access was permissive and that only dissemination was prohibited. Although Defendants reference Mr. Martinez being taught in a class by Peggy Bell, this fact is unsupported by Mary Hansen's deposition statements. Ms. Bell's presence cannot be confirmed. MA 26-27. Whether Martinez actually read and acknowledged or was provided the contents of Directive 4 is a disputed fact. MA 103-105, 23-23. Whether the power point slides referenced in ▮▮▮▮▮ affidavit were actually used in any training is unconfirmed, as ▮▮▮▮▮ noted that she was unable to confirm their use. MA 26-27. It is disputed whether the DELJIS directive regarding the obtainment of signed forms acknowledging the existence of Directive 4 was carried out or not by either DELJIS or the DSP. MA 23-24.

Regarding the investigations conducted by ▮ and ▮, there was never any finding of domestic abuse against Mr. Martinez involving ▮ and Mr. Martinez never admitted to any acts of domestic abuse involving ▮. ▮ 44. Mr. Martinez disputes the number of times information was run, allegedly in connection with ▮, and notes that it is common practice for officers to run the license plates of vehicle encountered while troopers are on shift. Martinez This information is corroborated by other deponents. Mr. Martinez noted that ▮ is near his home and within his patrol jurisdiction. MA 70-73. Given the fact that pro-active running of motor vehicle information in the course of patrol is a lawful purpose, the Defendants' assertion that Mr. Martinez allegedly ran license plates with no lawful purpose is disputed. Furthermore, Mr. Martinez also testified that he was taught to run the names of individuals he knew in order to stay familiar with the system and maintain that familiarity. MA 68-69.

Per his plea Martinez only ever admitted to unlawful use of information, not unlawful dissemination. Regarding the IA correspondence, Defendants' statement of fact omits the important point that Mr. Martinez requested not merely an IA hearing but also a Law Enforcement Officer's Bill of Rights ("LEOBOR") hearing, which is the only fair interpretation of Mr. Martinez's request for all process related to LEOBOR. DSPA – 168. ▮ ultimately terminated Mr. Martinez, and offered to meet with him or to have him meet with Human Resources to answer any questions after deciding to terminate Mr. Martinez and providing Mr. Martinez notice of his termination. There was never any hearing to determine that Mr. Martinez's plea to unlawful access constituted any offense requiring automatic dismissal under DSP policies. MA 2. Furthermore, Defendants improperly assume that the meeting referenced in ▮ letter was tantamount to a hearing. Mr. Martinez was not offered a hearing, but

merely a meeting to address any questions to ▮▮▮▮ or HR after his termination per the letter itself. DSPA 174.

Finally, Mr. Martinez testified that he did not earlier complain of discriminatory behavior and conduct because he feared retaliation or further mistreatment. MA 81-82. The lack of cause finding by the EEOC and Mr. Martinez's choice to not pursue a grievance alleging discrimination is irrelevant here. Furthermore, each individual noted by DSP in their statement of facts as a comparator actually engaged in a similar level of "improper access" as Martinez, or chose to improperly disseminate DELJIS information. Despite this fact, they were each ultimately punished less severely than Mr. Martinez. Importantly, Mr. Martinez also identified pervasive misuse of the DELJIS system for the purpose of supposedly humorous behavior towards various troopers. MA 80. This behavior was observable by those in a supervisory position, who had authority to curb violations of DELJIS policy or report such conduct to the DELJIS Board of Managers. MA 32-34. The fact that such conduct was never reported or disciplined, when compared to Martinez's treatment by his employer, demonstrates discriminatory activity towards Mr. Martinez by Defendant DSP.

## SUMMARY OF THE ARGUMENT

I. There is ample evidence demonstrating the presence of legitimate comparators, and Mr. Martinez is successful in rebutting any proffer of a legitimate nondiscriminatory basis for his termination.

II. Mr. Martinez was entitled to a hearing prior to being terminated, and was neither given nor offered a hearing. As a result, Mr. Martinez has evidence necessary to bring a claim for violation of his due process rights.

## STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts that could affect the outcome are 'material facts,' and a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party. *Lamont v. New Jersey*, 637 F.3d 177, 182 (3d Cir. 2011).

The movant bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this initial requirement is met, the burden shifts to the non-moving party to demonstrate the existence of a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989). In determining whether a genuine issue of material fact exists, the court views the evidence in the light most favorable to the party opposing summary judgment and draws all reasonable inferences in that party's favor. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).

## ARGUMENT

I. **MR. MARTINEZ SUCCESSFULLY REBUTS DEFENDANT DSP'S ALLGEDLY LEGITIMATE BASIS FOR TERMINATION AND ESTABLISHES A PRIMA FACIE CASE**

    a. **Plaintiff has successfully established a *prima facie* race discrimination claim**

To establish a *prima facie* case of race or sex discrimination under Title VII, a plaintiff must first establish that: "(1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) that adverse employment action gives rise to an inference of unlawful discrimination." *Tourtelotte v. Eli Lily and Co.*, 636 Fed. Appx. 831, 842 (3d Cir. 2016). Martinez has successfully established a *prima facie* case. Defendants perfunctorily conclude that Mr. Martinez does not possess the qualifications necessary for a DSP corporal because of his lack of DELJIS access. This is not so, or at the very release, this is a material fact in dispute. Furthermore, there were jobs within the DSP that Martinez could perform as a civilian that didn't require DELJIS access. As noted above, Mr. Martinez could serve as a corporal in the role of a court liaison or with minimal adjustment, a Trooper medic, or as a civilian mechanic. These positions either require minimal access to DELJIS or not access at all, and therefore Mr. Martinez's DELJIS access is not disqualifying.

### b. Martinez successfully rebuts DSP's proffered nondiscriminatory reason for termination

Defendants correctly state the burden shifting test under *McDonnell Douglas*. *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972). However, Mr. Martinez successfully demonstrates, by virtue of facts within the record, that any basis proffered by Defendants is mere pretext.

First, Defendants do not meet their burden by demonstrating that they had legitimate reason to terminate Martinez, and without a proper hearing. Mr. Martinez has alleged not only that his termination was discriminatory, but that the choice to terminate Mr. Martinez without a hearing was discriminatory. There is no basis in the record to refute the fact that Mr. Martinez was not offered a hearing, while other white officers were all offered process in connection with

the final discipline imposed. Furthermore, Defendants have failed to demonstrate that DELJIS access was necessary for Mr. Martinez to be employed as a trooper, or at the very least have failed to show that this is not a material fact in dispute. Therefore, the legitimacy of the offered basis for Mr. Martinez's discrimination is a material fact in dispute. Martinez successfully alleges that DELJIS access may have been unnecessary in some circumstances, thus casting the level of doubt necessary to reach consideration by a jury. *See generally Fuentes v. Perske*, 32 F.3d 759, 765 (3d Cir. 1994). At best, the record demonstrates that DELJIS access is necessary for many, but not all, positions within the DSP.

Next, DSP contends that Martinez has failed to present valid comparators that are "similarly situated in all relevant aspect." *See generally Danao v. ABM Janitorial Serv.*, 142 F. Supp.3d 363 (E.D. Pa. 2015). Given the fact that DELJIS access is not a necessary requisite for performing certain trooper jobs, Mr. Martinez's lack of DELJIS access is not a material difference between him and the other comparators. At least one of the comparators, ███████████, actually engaged in activity more severe than the improper access charges leveled against Mr. Martinez because they admitted to disseminating DELJIS information to third parties. [D.1. 81, p. 8]. As all comparators were guilty of DELJIS violations and afforded proper process in assessing discipline, the facts here are enough to establish that the comparators were similarly situated with respect to performance, position, and conduct.

Regarding discriminatory remarks and conduct, Mr. Martinez has alleged and testimony has corroborated that violations of DELJIS material was pervasive, and that such misuse was often done in conjunction with discriminatory conduct. MA 78-81. Despite the pervasive misuse of DELJIS, officers engaging in such conduct were not disciplined. MA 83-91. Martinez testified, and other testimony corroborates repeated racially discriminatory comments by

multiple officers, including an officer directly involved in consultations regarding Mr. Martinez's case, then ▮▮▮▮▮. MA 78-81. The conduct evidenced in the record is far more than mere stray remarks, and therefore also serves as suitable proof that of a pervasive discriminatory animus towards Hispanics. Additionally, beyond mere stray remarks, Mr. Martinez testified to, and other testimony supports the presence of, racially discriminatory conduct in the form of the posts using DELJIS photographs, items repeatedly being left in Mr. Matrinez's mailbox. This evidence is sufficient to demonstrate that Mr. Martinez's race played a role in his treatment, including his termination without a hearing. Given the extent of the remarks and conduct here, they should be given greater weight per the possible "rare" instance referenced in *Fuentes*. *Fuentes*, 32 F.3d at 767.

## II. MR. MARTINEZ IS NOT BARRED IN HIS PURSUIT OF A DUE PROCESS CLAIM AS HE WAS NOT OFFERED A HEARING

Initially, Mr. Martinez suspected that ▮▮▮▮▮ had direct involvement in various adverse employment actions taken against him given the delivery of a notice of suspension to him by ▮▮▮▮ and with her signature. Subsequent to discovery and the depositions taken in this matter, Mr. Martinez acknowledges that it is defendant ▮▮▮▮ has direct involvement, and does not oppose the dismissal of claims against ▮▮▮▮▮.

Regarding Defendant ▮▮▮▮, Mr. Martinez has demonstrated a *prima facie* case against him in his individual capacity based upon a violation of his due process rights under Section 1983. Regarding the argument that his substantive due process claim must fail, Mr. Martinez notes that it is undisputed that he was subject to a collective bargaining agreement, as such had reasonable basis to presume that his employment would continue. *See generally Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972). Here, the Court should view Mr.

Martinez's expectation of employment as similar to the continued expectation of employment discussed in *Roth*. *Id.* at 577. Therefore, the Court should reject Defendant's substantive due process argument.

Mr. Martinez successfully establishes a procedural due process claim, as no process was offered to him in the first place. Alternatively Mr. Martinez resolves the standard in *DeNinno* because he requested a hearing through his criminal attorney and he was simply never provided the requested hearing. DSPA-168. *See generally DeNinno v. Municipality of Penn Hills*, 269 Fed. App'x 153, 157 (3d Cir. 2008). The authority relied upon by Defendants to assert that plaintiff failed to avail himself of process that was available is either not germane or adequately satisfied. Mr. Martinez requested process, which he was due as a matter of right, pursuant to LEOBOR. Delaware courts have found that LEOBOR offers "enhanced" due process protections, and those protections should not be set aside here. *See generally McGee v. Council on Police Training*, 2014 Del. Super LEXIS 18, *47 (Del. Super. 2014)(citing *Knox v. City of Elsmere*, 1995 Del. Super. LEXIS 216, 1995 WL 339096 at *3 (finding the LEOBOR statute "provides law-enforcement officers with enhanced procedural due process safeguards")). The failure to provide Mr. Martinez a LEOBOR hearing as was requested constitutes a violation of due process requirement in LEOBOR and the general due process requirement that Mr. Martinez be provided an opportunity to be heard.

The reliance of Defendants on the presence of a collective bargaining agreement ("CBA") with a grievance procedure does not provide a path for Defendants to avoid providing Mr. Martinez a hearing. Indeed, the LEOBOR statute requires a hearing upon a suspension or any other disciplinary action regardless of the presence of a CBA, and merely notes that the conduct of any such hearing would be governed by any terms outlined in a CBA. 11 *Del. C.* § 92021. The

presence of a CBA, however, does not absolve Defendant ▆▆▆ of assuring Mr. Martinez was afforded a hearing. Mr. Martinez requested a hearing pursuant to his rights under LEOBOR, which in and of itself should have triggered the hearing process set forth in the CBA or contained within LEOBOR. DSPA-168. Therefore, here, Mr. Martinez requested a hearing and all relevant process, and quite simply Defendant ▆▆▆ failed to provide the requisite hearing before choosing to terminate Mr. Martinez. This prevents Defendant ▆▆▆ from relying upon *Michael v. Quaker Valley Sch. Dist.* As Mr. Martinez requested a hearing pursuant to his particular rights under LEOBOR, which is required to be provided and may not be waived unless such waiver is documents in writing. *Town of Cheswold v. Rosario*, 945 A.2d 1168, 2008 WL 853541, *1 (Del. 2008) (holding that 11 *Del. C.* § 9204 "makes plain [that] waiver of a scheduled hearing can only occur by written consent"). This Court should read LEOBOR similar to Delaware state court authority, and find that a specific request for a grievance does not absolve the state police of the process that is owed pursuant to LOEBOR absent a written waiver.

Similarly, the Court should reject Defendant's reliance upon the offer of a meeting, to be held after Mr. Martinez was already terminated, as a circumstance wherein Martinez's failure to ask for the meeting constitutes a failure to avail himself of available process. Mr. Martinez was not offered a hearing prior to it being determined that his employment was ended. Rather, Mr. Martinez was given a chance to ask questions about the directions laid out in the letter in light of his termination. Defendants have offered no case law to support the unsupportable assertion that the failure to ask question about a termination of one's employment amounts to the waiver of a hearing that Mr. Martienz was never offered. The only writing that appears to exist on this point is the letter from Mr. Martinez's criminal attorney requesting a hearing.

Mr. Martinez never waived his LEOBOR hearing. To the contrary, he merely waived any timeframe requirement in connection with such a hearing. DSPA 347, 354-355. The only writing that speaks to this point unambiguously demonstrates that Mr. Martinez requested process pursuant to LOEBOR. DSPA 168. This Court should reject Defendant's argument that the protections of the LEOBOR statute were not triggered. Here, Mr. Martinez was terminated and denied a hearing based upon lack of DELJIS access. Mr. Martinez has offered some evidence to demonstrate that this basis for summarily terminating Mr. Martinez without a hearing was merely an excuse to explain the choice to deny Mr. Martinez the process that he should have been due. Mr. Martinez's termination, which was more severe than a suspension and should be construed as "other discipline", should be interpreted by this Court to trigger the protections in LEOBOR, consistent with *McGee*. *McGee*, at *47. The failure to provide any hearing whatsoever not only violates LEOBOR but should also be construed to violate basic procedural due process protections, as Mr. Martinez was not given a chance to be heard prior to termination. *McDaniels v. Flick*, 59 F.3d 446, 454 (3d. Cir. 1995).

Finally, defendant ▮ either knowingly violated Mr. Martinez's rights, or this court should find that the failure to provide a hearing fell so far below acceptable standard that qualified immunity ought not to apply. *See Curley v. Klem*, 499 F.3d 199, 206 (3d. Cir. 2007). This Court should reject Defendant's contention that he is entitled to qualified immunity and find that the standard in *Klem* is met. LEOBOR is a well-known Delaware statute that plainly requires certain enhanced procedural due process for officers. Defendant chose to terminate Mr. Martinez without a hearing, which is a clear violation of Mr. Martinez's rights under the statute. There are multiple jobs that may be performed by a trooper or employee of DSP that do not require access to DELJIS. Here, any ignorance of the law on behalf of ▮ would certainly be

incompetent. The Court should not provide Defendant the cloak of qualified immunity, and should permit Mr. Martinez's procedural due process claim to proceed.

Finally, Mr. Martinez could be provided a job offer from DSP conditioned upon the reestablishment of his credentials under the Council on Police Training process. As a result, Defendant's assertion regarding the potential equitable relief available to Mr. Martinez should also be rejected by this Court.

## CONCLUSION

For the foregoing reasons, this Court should reject Defendants' Motion for Summary Judgement. This Court should determine that there are numerous disputes of material fact, that Plaintiff has met his burden in demonstrating that the basis for his termination is mere pretext, and that Mr. Martinez is entitled to the process required of Defendants under LEOBOR.

June 25, 2018

**Offit Kurman**

*/s/ Anthony N. Delcollo*
G. Kevin Fasic (# 3496)
Katherine Randolph Witherspoon (# 3348)
Anthony N. Delcollo (# 5688)
1201 N. Orange Street
Suite 10 East
Wilmington, DE 19805
(302) 351-0903 – Telephone
(302) 351-0935 – Facsimile
adelcollo@offitkurman.com – Email